CRYSTAL SAGEN, Plaintiff-Appellee, v. JEWEL COMPANIES, INC., *et al.*, Defendants-Appellants.

Second District   No. 85—0603

Opinion filed October 20, 1986.—Rehearing denied November 19, 1986.

Terrill Elise Pierce and Max G. Brittain, Jr., both of Kovar, Nelson & Brittain, of Chicago, for appellants.

Grant Eckhoff and James M. O'Shaughnessy, both of Naperville, for appellee.

JUSTICE STROUSE delivered the opinion of the court:

This action was brought by plaintiff, Crystal Sagen, seeking recovery against defendants, Jewel Companies, Inc., and its employee, Fred Meyer, for tortious interference with plaintiff's business relationship with defendant Jewel. The jury rendered a verdict for plaintiff.

Plaintiff was employed by Jewel and worked at the same grocery store for about one year and a half. She was a part-time employee, covered by a collective-bargaining agreement with the United Commercial Food Workers Union, which was her exclusive collective-bargaining agent. There was no question raised as to plaintiff's union representation or her exercise of grievance procedures during the trial, or in the post-trial motion. The union representative established that plaintiff was not an "at will" employee and that defendant Meyer, the store's manager, based on the union contract, could not fire her without cause.

On or about December 1, 1980, the method of checking out groceries changed from the "key entry" system to the "scanning" system. During the following weeks, the checkers, including plaintiff,

were trained in the new system.

Plaintiff key entered with her left hand which was, according to Meyer, contrary to the new system's procedures. The service manager at the Jewel store who directly supervised plaintiff confirmed that she had the same understanding of Jewel policy and so instructed plaintiff.

Plaintiff alleged that numerous improper actions against her by Jewel employees to enforce this policy were arbitrary and discriminatory and violated the terms of her employment agreement. This, she alleged, interfered with her employment relationship with Jewel. Plaintiff, however, did not pursue her complaint with the union which represented her or contact any personnel representatives of Jewel to complain of improper treatment. Instead, she voluntarily resigned around September 17, 1981, and filed this suit on June 17, 1982. Thereafter, the jury awarded plaintiff $18,378 in compensatory damages and exemplary damages in the sum of $118,378.

We allowed defendants' motion to file a supplemental brief raising the additional argument that plaintiff's claim is preempted by section 301 of the Labor-Management Relations Act of 1947 (LMRA) (29 U.S.C. sec. 185 (1982)), and that this court should address the issue even though defendants failed to raise it below.

The United States Supreme Court recently addressed the issue of whether preemption of State proceedings by the National Labor Relations Act "is in the nature of an affirmative defense that must be asserted in the trial court or be considered forever waived or whether it is in the nature of a challenge to a court's power to adjudicate that may be raised at any time." (*International Longshoremen's Association, AFL-CIO v. Davis* (1986), 476 U.S. ___, ___, 90 L. Ed. 2d 389, 395, 106 S. Ct. 1904, 1907.) It held that NLRA preemption, the scope of which has been set forth in *San Diego Building Trades Council v. Garmon* (1959), 359 U.S. 236, 3 L. Ed. 2d 775, 79 S. Ct. 773, is jurisdictional. *International Longshoremen's Association, AFL-CIO v. Davis* (1986), 476 U.S. ___, ___, 90 L. Ed. 2d 389, 405, 106 S. Ct. 1904, 1916.

While *Davis* revolved around sections 7 and 8 of the National Labor Relations Act (29 U.S.C. secs. 157, 158 (1982)), the nature of any specific preemption claim will depend on congressional intent in enacting the particular preempting statute. (See *International Longshoremen's Association, AFL-CIO v. Davis* (1986), 476 U.S. ___, ___ n.9, 90 L. Ed. 2d 389, 401 n.9, 106 S. Ct. 1904, 1912 n.9.) Case law has clearly held that Congress has intended that preemption applies to section 301 of the NLRA.

450

■ We believe *Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502, and *National Metalcrafters v. McNeil* (7th Cir. 1986), 784 F.2d 817, cited by defendants, are applicable to the present case. *Wheeler*, by analogy, persuades us that a reviewing court could raise, even *sua sponte*, the question of whether a Federal act precludes a State action. (*Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502, 506.) *National Metalcrafters* reached the same conclusion for different but equally persuasive reasons. *National Metalcrafters v. McNeil* (7th Cir. 1986), 784 F.2d 817, 826.

We determine that the question of preemption is jurisdictional and may be raised at the appellate level. Therefore, defendants have not waived their claim by failing to raise the issue at trial. We must then decide whether plaintiff's alleged State law claim is preempted by Federal law.

■ The preemption doctrine has its basis in the supremacy clause of the Federal Constitution (U.S. Const., art. VI, cl. 2). Federal law, under this doctrine, is deemed to override or preempt State laws on the same subject in some instances. (See generally *Rice v. Santa Fe Elevator Corp.* (1947), 331 U.S. 218, 229-31, 91 L. Ed. 1447, 1459, 67 S. Ct. 1146, 1151-53.) The question of whether State action is preempted by Federal law is one of Congressional intent. *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 208, 85 L. Ed. 2d 206, 213, 105 S. Ct. 1904, 1910.

Recently, in *Bartley v. University Asphalt Co.* (1986), 111 Ill. 2d 318, 333, the Illinois Supreme Court held that the plaintiff's cause of action against his union for civil conspiracy was preempted by Federal labor-contract law. The court found that plaintiff's cause of action for civil conspiracy was substantially dependent upon analysis of the terms of the collective-bargaining agreement. This finding was based on the court's analysis of plaintiff's complaint, wherein plaintiff alleged that a collective-bargaining agreement was in force between defendants; that the employer violated the terms of the agreement; that the union conspired with the employer to violate the terms; and that the union breached its statutory duty of fair representation. The court concluded that plaintiff's State tort claim was "inextricably intertwined with consideration of the terms of the labor contract." 111 Ill. 2d 318, 332, citing *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 213, 85 L. Ed. 2d 206, 216, 105 S. Ct. 1904, 1912.

Several lower Federal courts have reached the same conclusion. See, *e.g.*, *Mitchell v. Pepsi-Cola Bottlers, Inc.* (7th Cir. 1985), 772 F.2d 342 (employee's State claim of tortious termination of employment); *Oglesby v. RCA Corp.* (7th Cir. 1985), 752 F.2d 272 (State tort action

for retaliatory discharge preempted by section 301 of the LMRA); *Hillard v. Dobelman* (8th Cir. 1985), 774 F.2d 886 (State claim of tortious interference with contract); *Eitmann v. New Orleans Public Service, Inc.* (5th Cir. 1984), 730 F.2d 359 (employee's claim against employer for breach of his individual employment contract); *Moore v. General Motors Corp.* (8th Cir. 1984), 739 F.2d 311 (employee's State action for fraud and misrepresentation against employer); *Olguin v. Inspiration Consolidated Copper Co.* (9th Cir. 1984), 740 F.2d 1468 (State action for wrongful discharge and intentional infliction of emotional distress).

In *Lueck*, the court held that the State tort claim against plaintiff's employer and its insurer, alleging bad faith in the handling of his disability claim, was preempted by section 301 of the LMRA. The court stated that congressional policy favors a uniform body of Federal labor-contract law. Any State rule that purports to define the meaning or scope of a term in a labor-contract suit is preempted. (*Allis Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 210, 85 L. Ed. 2d 206, 215, 105 S. Ct. 1904, 1911.) The court concluded that the same policy considerations required application of the preemption doctrine to many State tort claims.

> "If the policies that animate sec. 301 are to be given their proper range, however, the pre-emptive effect of sec. 301 must extend beyond suits alleging contract violations. These policies require that 'the relationships created by [a collective-bargaining] agreement' be defined by application of 'an evolving federal common law grounded in national labor policy.' *** The interests in the interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation. Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. Any other result would elevate form over substance and allow parties to evade the requirements of sec. 301 by re-labeling their contract claims as claims for tortious breach of contract." 471 U.S. 202, 210-11, 85 L. Ed. 2d 206, 215, 105 S. Ct. 1904, 1911.

In concluding that the State tort claim was dependent upon analysis of the terms of the labor agreement, the Supreme Court looked to

two factors. The history of the State tort was reviewed to discover whether it was intrinsically related to the nature and existence of the labor contract, and the court analyzed whether the claims were those traditionally resolved through arbitration. This analysis was necessary to preserve the effectiveness of arbitration, a central tenet of Federal labor-contract law. 471 U.S. 202, 220, 85 L. Ed. 2d 206, 221, 105 S. Ct. 1904, 1916.

■■ ■ Plaintiff's suit is premised as a State tort suit for interference with employment relations and essentially alleges a violation of a collective-bargaining agreement. Plaintiff alleged that her employment agreement regulated the conditions of her employment work rules, it did not prohibit the use of her left hand, and defendants contravened that agreement. The alleged contract can only be the collective-bargaining agreement because the National Labor Relations Act precludes any other agreement that is or may be inconsistent therewith. (*Olguin v. Inspiration Consolidated Copper Co.* (9th Cir. 1984), 740 F.2d 1468, 1474.) Indeed, the very nature of the tort itself connotes employee-employer labor relations which are governed by a collective-bargaining agreement. Moreover, these claims appear to be those that traditionally should be resolved through arbitration. Maintenance of such a tort action requires plaintiff to show that the labor agreement was breached; such a determination should be governed by Federal labor laws.

Not all disputes between parties to a collective-bargaining agreement fall under section 301. For instance, a State battery suit growing out of a violent strike would not arise under section 301 simply because the strike may have been a violation of an employer-union contract. (See *Franchise Tax Board v. Construction Laborers Vacation Trust For Southern California* (1983), 463 U.S. 1, 25 n.28, 77 L. Ed. 2d 420, 440-41 n.28, 103 S. Ct. 2840, 2854 n.28.) The distinction arises, however, where a tort suit would allow the State to provide a decision where Congress has mandated that Federal law should govern. *Gibson v. AT & T Technologies, Inc.* (7th Cir. 1986), 782 F.2d 686, 689; compare, *e.g., International Union, United Automobile, Aircraft & Agricultural Implement Workers of America v. Russell* (1958), 356 U.S. 634, 640, 2 L. Ed. 2d 1030, 1035-36, 78 S. Ct. 932, 935-36.

An evaluation of plaintiff's cause of action reveals that it is dependent upon analysis of the terms of the collective-bargaining agreement. Plaintiff's asserted right and defendant's alleged duty arise from that collective-bargaining agreement. Thus, plaintiff's State tort claim is "inextricably intertwined with consideration of the terms of the labor contract." *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S.

202, 213, 85 L. Ed. 2d 206, 216, 105 S. Ct. 1904, 1912.

We hold that plaintiff's cause of action is preempted by Federal labor law.

Reversed.

NASH, P.J., and WOODWARD, J., concur.