**Christine BALDRACCHI, Appellant,**

**v.**

**PRATT & WHITNEY AIRCRAFT DIVISION, UNITED TECHNOLOGIES CORPORATION, Appellee.**

**No. 766, Docket No. 86–7948.**

United States Court of Appeals, Second Circuit.

Argued Feb. 11, 1987.

Decided March 17, 1987.

Gregg D. Adler, Hartford, Conn. (Kestell, Pogue & Gould, Daniel E. Livingston, of counsel), for appellant.

Edward J. Dempsey, Hartford, Conn., Director, Indus. Relations & Labor Counsel & Atty. for Pratt & Whitney Aircraft Div. and United Technologies Corp., for appellee.

Before FEINBERG, Chief Judge, LUMBARD and MINER, Circuit Judges.

FEINBERG, Chief Judge:

This case presents the important question whether section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, which gives federal courts jurisdiction over suits alleging violations of collective bargaining agreements, preempts an action by a union member under a state statute that prohibits the discharge of an employee for filing a workers' compensation claim. The discharged employee, Christine Baldracchi, appeals from an order of the United States District Court for the District of Connecticut, Alan H. Nevas, J., denying her motion to remand to the state court and granting defendant's motion to dismiss the complaint. Because we believe that Baldracchi's action is not preempted by section 301 of the LMRA, we reverse and remand with instructions to remand to the state court.

## I. *Background*

The facts relevant to this appeal are uncomplicated. Baldracchi filed suit in the Superior Court of the State of Connecticut claiming that she had been wrongfully discharged by Pratt & Whitney Aircraft Division of United Technologies Corporation (Pratt & Whitney) for filing a workers' compensation claim. Prior to her discharge, Baldracchi was employed by Pratt & Whitney under the terms of a collective bargaining agreement between Pratt & Whitney and Lodge 1746, International Association of Machinists and Aerospace Workers. Her complaint alleged that by firing her, Pratt & Whitney had violated Conn.Gen.Stat. § 31–290a, which prohibits employers subject to the statute from discharging an employee for filing a claim for workers' compensation benefits and provides civil remedies for violation of the statute.[1]

1. The statute provides:

(a) No employer who is subject to the provisions of [Connecticut workers' compensation law] shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter.

(b) Any employee who is so discharged or discriminated against may either: (1) Bring a civil action in the superior court for the judicial district where the employer has its principal office for the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he would have otherwise been entitled if he had not been discriminated against or discharged and any other damages caused by such discrimination or discharge. The court may also award punitive damages. Any employee who prevails in such a civil action shall be awarded reasonable attorney's fees and costs to be taxed by the court; or (2) file a complaint with the chairman of the workers' compensation commission alleging violation of the provisions of subsection (a) of this section. Upon receipt of any such complaint, the chairman shall select a commissioner to hear the complaint, provided any commissioner who has previously rendered any decision concerning the claim shall be excluded. The hearing shall be held in the workers' compensation district where the employer has its principal office. After the hearing, the commissioner shall send each party a written copy of his decision. The commissioner may award the employee the reinstatement of his previous job,

Pratt & Whitney removed the action to the United States District Court arguing that, since Baldracchi was covered by a collective bargaining agreement while she worked for Pratt & Whitney, her wrongful discharge suit must be construed as claiming a violation of that agreement. Therefore, Pratt & Whitney contended, her action presents a federal question arising under section 301 of the LMRA. In the district court, Baldracchi moved to remand the case for lack of subject matter jurisdiction, while Pratt & Whitney moved to dismiss the complaint for failure to state a claim upon which relief can be granted. The district court, holding that "plaintiff's cause of action has been preempted by federal law," denied the motion to remand and granted the motion to dismiss the complaint.

## II. *Discussion*

The resolution of this appeal turns on the question whether section 301 of the LMRA preempts Baldracchi's claim under the Connecticut statute. If it does, the district court acted correctly in denying the motion to remand and applying federal law; dismissal for failure to state a claim upon which relief could be granted was also proper because, under federal law, Baldracchi would first have to utilize the grievance procedure provided in the collective bargaining agreement. Conversely, if section 301 does not preempt her claim under the Connecticut statute, Baldracchi has a right to pursue it in state court, and the district court should have remanded the suit.

■ Congress' authority to preempt state law derives from the Supremacy Clause of the Constitution. See *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 210–11, 6 L.Ed. 23 (1824). Since Congress has not exercised its authority to occupy the entire field of labor law, "the question whether a certain state action is pre-empted by federal law is one of congressional intent." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 208, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985). The issue thus becomes whether Congress intended to preempt state statutes that protect workers' compensation actions when it enacted Section 301 of the LMRA.

■ Section 301 provides subject matter jurisdiction to the federal courts for suits involving violations of collective bargaining agreements.[2] In cases where section 301 is the basis of jurisdiction, it also requires that courts apply federal common law to determine the meaning of the agreement. *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–04, 82 S.Ct. 571, 576–77, 7 L.Ed.2d 593 (1962). Thus, the Supreme Court has held that section 301 preempts a state claim when "resolution of a state-law claim is substantially dependent upon analysis of the terms of [a collective bargaining] agreement." *Allis-Chalmers*, 471 U.S. at 220, 105 S.Ct. at 1916. Pratt & Whitney argues that section 301 preemption is mandated here because adjudication of the state claim will require reference to the collective bargaining agreement. In pressing this fundamental contention in a number of ways, Pratt & Whitney relies principally on *Allis-Chalmers v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904.

In *Allis-Chalmers*, the Court held that plaintiff's suit alleging a state law tort of bad-faith handling of an insurance claim by an employer was preempted by section 301. Plaintiff, an employee of Allis-Chalmers, was covered by a collective bargaining agreement that provided for payment of insurance benefits for non-occupational in-

---

payment of back wages and reestablishment of employee benefits to which he otherwise would have been eligible if he had not been discriminated against or discharged. Any employee who prevails in such a complaint shall be awarded reasonable attorney's fees. Any party aggrieved by the decision of the commissioner may appeal the decision to the appellate court.

**2.** Section 301 of the LMRA provides in relevant part:

(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

juries. Plaintiff suffered a non-occupational injury and sued Allis-Chalmers for bad-faith handling of his insurance claim. Although he did receive benefits, plaintiff contended that Allis-Chalmers had acted in bad faith by periodically ordering the insurance company to cut off its payments to him.

The Court concluded that plaintiff's claim was dependent upon the terms of the collective bargaining agreement. It pointed out that interpretation of the labor agreement would determine "whether there was an obligation ... to provide the payments in a timely manner," and thus whether Allis-Chalmers' action in suspending those payments constituted bad faith. The Court pointed out further that "if the arbitrator ruled that the labor agreement did *not* provide [relief for improper payment of benefits], that too should end the dispute, for under Wisconsin law there is nothing that suggests that it is not within the power of the parties to determine what would constitute 'reasonable' performance of their obligations under an insurance contract." 471 U.S. at 215–16, 105 S.Ct. at 1913–14. Thus, the insurance tort in *Allis-Chalmers* "not only derive[d] from the contract, but [was] defined by the contractual obligation of good faith." 471 U.S. at 218, 105 S.Ct. at 1914. This dependence of the state claim on the labor agreement mandated preemption under section 301.

In contrast to the tort in *Allis-Chalmers*, Baldracchi's suit is independent of the collective bargaining agreement. Her claim of retaliation for filing a workers' compensation claim does not turn on interpretation of that agreement. At trial, Baldracchi would have to present a prima facie case that she was in fact fired for filing a workers' compensation claim. See 2A A. Larson, The Law of Workmen's Compensation § 68.36(c) (1986). In its defense, Pratt & Whitney would have to demonstrate that Baldracchi was fired for another, non-pretextual reason.

Pratt & Whitney urges, however, that determining whether its proffered reason for firing Baldracchi was "legitimate," i.e., for "just cause" under the labor agreement, would require interpretation of that agreement. Thus, it argues, once Baldracchi makes out a prima facie case, reference to the labor contract is necessary. We do not agree. Pratt & Whitney's liability for retaliatory discharge under the statute is not decided by reference to the labor contract. Indeed, the Connecticut statute specifically prohibits such reference. See Conn.Gen.Stat. § 31–290.[3] Pratt & Whitney would have to satisfy the trier of fact in the state court only that it fired Baldracchi for a reason unrelated to her filing a workers' compensation claim. Though it would have to show that the reason was more than a pretext, it would not have to establish that the grounds for Baldracchi's termination amounted to "just cause" under the collective bargaining agreement.

Moreover, the rights provided by section 31–290a cannot be bargained away. See note 3, supra. Unlike the tort in *Allis-Chalmers*, where the claim of the employee was "rooted" in the agreement between the parties, 471 U.S. at 220, 105 S.Ct. at 1916, the right under the Connecticut statute is absolute and cannot be waived. Compare id. at 213, 105 S.Ct. at 1912. In *Allis-Chalmers*, the Court noted that "[c]learly, § 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law." 471 U.S. at 212, 105 S.Ct. at 1912. We take this to mean that even if the labor agreement provided that Pratt & Whitney could discharge an employee who filed a workers' compensation claim, the provision would have no effect on Baldracchi's claim under the Connecticut statute. Thus, it is difficult to see how determination of that claim can be said to depend on the collective bargaining agreement. Cf. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51–52, 94 S.Ct. 1011, 1021–22, 39 L.Ed.2d 147 (1974) (distinguishing rights subject to collective bargaining from anti-discrimination

---

**3.** The statute provides:

No contract, expressed or implied, no rule, regulation or other device shall in any manner relieve any employer, in whole or in part, of any obligation created by this chapter, except as herein set forth.

rights in holding that the latter cannot be waived by a collective bargaining agreement.).

■ It is true that determining what relief Baldracchi would be entitled to if she prevailed in the state courts might involve examination of the labor contract. For example, determination of damages might require establishing Baldracchi's rate of pay and other economic benefits under the labor contract. However, not every question "tangentially involving a provision of a collective-bargaining agreement[ ] is pre-empted by § 301." *Allis-Chalmers*, 471 U.S. at 211, 105 S.Ct. at 1911. Determination of the extent of damages is not the sort of "substantial dependence" on the labor agreement that mandates section 301 preemption.

Pratt & Whitney also argues that a procedure for redressing Baldracchi's retaliatory discharge claim is fully provided for in the portion of the collective bargaining agreement dealing with remedies for discharge without "just cause." This argument is based on a concern with the "need to preserve the effectiveness of arbitration." *Allis-Chalmers*, 471 U.S. at 219, 105 S.Ct. at 1915. In *Allis-Chalmers*, the Court pointed out that nearly any claim under a collective bargaining agreement could easily be restated as a tort claim for breach of a good-faith obligation under a contract. If this simple recasting of the claim sufficed to avoid section 301 preemption, the "federal right to decide who is to resolve contract disputes will be lost," id., since the tort action would not be subject to mandatory arbitration. However, such manipulation is not a concern in this case because, as demonstrated above, Baldracchi's claim is not derivative from the collective bargaining agreement.

There are other grounds for believing that Congress did not intend preemption here. Our holding that a claim under the Connecticut statute is not preempted by section 301 is strongly supported by the Supreme Court's decision, after *Allis-Chal-*

*mers*, in *Pan American World Airways v. Puchert*, 472 U.S. 1001, 105 S.Ct. 2693, 86 L.Ed.2d 710 (1985). *Puchert* was an appeal from a decision of the Supreme Court of Hawaii, *Puchert v. Agsalud*, 67 Hawaii 225, 677 P.2d 449 (1984), holding that a state prohibition of discharge in retaliation for filing a workers' compensation claim was not preempted by the Railway Labor Act (RLA), 45 U.S.C. §§ 151 et seq., see 677 P.2d at 454–56. The United States Supreme Court dismissed the appeal for want of a substantial federal question. If the Hawaii law were preempted by the RLA, the case would necessarily have presented the Court with a substantial federal question.

Courts have used general federal labor law preemption standards to determine whether the RLA preempts state law. E.g., *Beers v. Southern Pac. Transp. Co.*, 703 F.2d 425, 428–29 (9th Cir.1983); *Puchert v. Agsalud*, 677 P.2d at 455–56. Thus, given that Congress did not intend the RLA to preempt statutes like section 31–290a, it seems unlikely that a different approach would be taken with the LMRA. Indeed, if anything, the more compulsory arbitration provisions of the RLA, 45 U.S.C. § 153 First, would suggest a greater congressional intent to preempt state law under the RLA than under federal labor law. Cf. *Jackson v. Consolidated Rail Corp.*, 717 F.2d 1045, 1052 (7th Cir. 1983), cert. denied, 465 U.S. 1007, 104 S.Ct. 1000, 79 L.Ed.2d 233 (1984) (state claim more likely to impinge on exclusive administrative jurisdiction under the RLA than under the National Labor Relations Act). The Supreme Court's decision in *Puchert* thus suggests that section 31–290a is not preempted by federal law.

Further evidence of congressional intent not to preempt may be found in 28 U.S.C. § 1445(c), which prohibits the removal of workers' compensation actions to federal court.[4] Admittedly, enactment of that statute was largely motivated by a commendable desire of Congress to limit the diversi-

---

**4.** Section 1445(c) provides:
A civil action in any State court arising under the workmen's compensation laws of such State

may not be removed to any district court of the United States.

ty jurisdiction of the federal courts. Congress was also concerned, however, that removal of workers' compensation cases would require application of federal procedural rules that could work to the detriment of the injured worker. See S.Rep. No. 1830, 85th Cong., 2d Sess. 9, reprinted in 1958 U.S.Code Cong. & Admin.News 3099, 3106. Thus, section 1445(c) reveals a congressional intent not to interfere with state protection of workers' compensation rights.

Finally, it should be noted that the position urged by Pratt & Whitney would have the effect of granting less state law protection to employees governed by collective bargaining agreements than to other employees. While a non-union Connecticut worker's right to file a workers' compensation claim would remain protected by section 31–290a, union members like Baldracchi would be protected only by their collective bargaining agreements. In an analogous circumstance, the Supreme Court stated, "It would turn the policy that animated the Wagner Act on its head to understand it to have penalized workers who have chosen to join a union by preventing them from benefiting from state labor regulations imposing minimal standards on nonunion employers." *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 756, 105 S.Ct. 2380, 2398, 85 L.Ed.2d 728 (1985).

In deciding that Baldracchi's wrongful discharge claim is not preempted by section 301, we are aware that other circuit courts have reached varying conclusions on this issue. Compare *Herring v. Prince Macaroni of New Jersey, Inc.*, 799 F.2d 120, 124 n. 2 (3d Cir.1986) (no preemption) and *Peabody Galion v. Dollar*, 666 F.2d 1309, 1316–19 (10th Cir.1981) (no preemption, pre-*Allis-Chalmers*) with *Johnson v. Hussmann Corp.*, 805 F.2d 795, 797 (8th Cir. 1986) (preemption) and *Vantine v. Elkhart Brass Mfg. Co.*, 762 F.2d 511, 516–18 (7th Cir.1985) (preemption). See also, *Garibaldi v. Lucky Food Stores, Inc.*, 726 F.2d 1367, 1371–76 (9th Cir.1984), cert. denied, 471 U.S. 1099, 105 S.Ct. 2319, 85 L.Ed.2d 839 (1985) (no preemption of "whistle blower" wrongful discharge statute by section

301.). In our view, however, the sounder result is reached in cases holding that statutes like section 31–290a provide rights independent of collective bargaining agreements and are not preempted by section 301 of the LMRA.

We conclude that Baldracchi's claim is not preempted by section 301 of the LMRA. Accordingly, we reverse and remand the case to the district court with instructions to remand to the state court.